**ALASKA STATE HOUSING AUTHORITY,**
a public corporate authority, Appellant,

v.

**Charles L. VINCENT and Elizabeth J. Vincent, as owners of Parcel 3–17,**
Appellees.

No. 458.

Supreme Court of Alaska.

Nov. 12, 1964.

———◇———

Allen L. Jewell, Anchorage, for appellant.

James K. Tallman, Anchorage, for appellees.

Before NESBETT, C. J., and DIMOND and AREND, JJ.

·AREND, Justice.

The Alaska State Housing Authority, hereinafter referred to as the Authority, appeals from a verdict and judgment in the superior court awarding to the appellees $17,000 for the taking of their property in a condemnation proceeding brought against them by the Authority. At times we shall refer herein to the appellees as the Vincents.

The property taken by the Authority from the Vincents consisted of two vacant city lots at Spenard Road and West 19th Avenue in the City of Anchorage. The lots have a combined area of 14,500 feet. On May 1, 1962, court-appointed commissioners found the value of the two lots to be $4,635. The Vincents appealed this finding to the superior court, and the case was there tried by jury in February of 1963. In entering judgment on the jury's verdict for the Vincents, the trial court awarded them an attorney's fee of $1,250.

Neither party was satisfied with the result. The Vincents felt that the trial court erred in not awarding sufficient attorney fees and in not allowing interest on the award from the date suit was instituted. A motion to amend the judgment to correct the alleged error was filed by the Vincents on March 2, 1963. On December 10, 1963, the court ordered that the judgment previously entered "shall carry interest at six per cent per annum * * * from the date of said Judgment" and that the attorney's fee remain at $1,250.

The Authority expressed its dissatisfaction with the verdict and judgment by filing a motion on March 4, 1963, for a new trial on the ground that there was no evidence to support the verdict; or, in the alternative, that the court allow the verdict to stand on the condition that the Vincents "remit an amount consistent with the evidence admitted at the trial." This motion was denied on September 5, 1963. On December 11, 1963, the Authority gave notice of appeal from the judgment and from the order denying the motion for a new trial, and on January 14, 1964, the Vincents moved in this court to dismiss the appeal on the grounds that it had not been timely filed. We denied the motion, without opinion.

The Vincents filed a cross-appeal on January 7, 1964, and in their statement of points on which they intended to rely, claimed error on the part of the trial court in not awarding them an attorney's fee of at least $2,550 in accordance with Civil Rule 82(a) (1),[1] and in failing to allow them interest from the date that the Authority filed its notice of taking in the case, that is, from May 15, 1961. We dismissed the cross-appeal on our own motion on March 3, 1964, for failure of the Vincents as cross-appellants to file their brief within the time prescribed and in accordance with Supreme Court Rule 11(d).[2]

In their brief on this appeal the Vincents ask us to reconsider our order dismissing their cross-appeal for failure to file a timely brief and also our order denying their motion to dismiss the Authority's appeal. The Vincents have not persuaded us that either order was erroneous or ill advised. Therefore, the orders will remain unchanged.

Going now to the questions presented by the specification of errors appearing in the brief of the Authority, we consider first that agency's claim that it was reversible error for the jurors to use a dictionary given to them by the bailiff without the consent

1. Civil Rule 82(a) (1) provides as follows:

   "*Unless the court, in its discretion, otherwise directs*, the following schedule of attorney's fees will be adhered to in fixing such fees for the party recovering any money judgment therein, as part of the costs of the action allowed by law:

   ATTORNEY'S FEES IN AVERAGE CASES

   |       |          | Contested | Without Trial | Non-Contested |
   |-------|----------|-----------|---------------|---------------|
   | First | $2,000   | 25%       | 20%           | 15%           |
   | Next  | $3,000   | 20%       | 15%           | 12.5%         |
   | Next  | $5,000   | 15%       | 12.5%         | 10%           |
   | Over  | $10,000  | 10%       | 7.5%          | 5%            |

   "Should no recovery be had, attorney's fees for the prevailing party may be fixed by the court as a part of the costs of the action, in its discretion, in a reasonable amount." [*Emphasis supplied.*]

2. Supreme Court Rule 11(d) provides in part that when the appellant's brief is not filed as required, the court may forthwith on its own motion take appropriate action which may include dismissal of the appeal.

of the parties or the trial judge. They specify as error on this point:

"2. The jurors' unauthorized use of a dictionary during their deliberations, and the failure to determine whether such use influenced their verdict."

■ It is apparent that the specification charges two distinct errors, one evidently on the part of the jury and the other on the part of the trial judge. Failure to separately set out each error charged constitutes a violation of one of the requirements of Supreme Court Rule 11(a) (6) and where that occurs we need not consider the specification.[3]

The next and, as we see it, the basic issue to be resolved in this case is whether the jury's verdict as to the value of the property is supported by the evidence. That issue is raised rather unartfully in the Authority's first and third specifications of error which are set forth in the margin below.[4] However, it is quite clear from the arguments advanced by the Authority both in the superior court and on appeal that its contention is that the evidence did not support the verdict because it was both insubstantial and incompetent.

■ The burden of proof as to value was, of course, upon the owners of the property, the Vincents.[5] The court so instructed the jury and the Vincents voiced no objection.

The Authority had based its motion for a new trial or remittitur upon the grounds: "That no evidence was admitted at the trial which supports the verdict, thus the jury clearly disregarded the evidence in reaching its verdict or the jury failed to follow the instructions given it by the Court." In denying the motion, the trial court stated that it relied upon the principles we announced in the case of Snipes v. March.[6]

In the Snipes case a jury found the defendant guilty of negligence and gave a verdict in damages for the plaintiff. The defendant moved for judgment notwithstanding the verdict (n. o. v.) and the trial court granted the motion for lack of evidence to support the verdict. We reversed the trial court and ruled that a judgment n. o. v. is justified only "if the evidence was such that fair minded men, in the exercise of reasonable judgment, could not differ." And we added, "In our view of the evidence there was room for diversity of opinion among reasonable men * * *."[7]

The Authority urges that the trial court erred in applying the Snipes test to the situation in the instant case. In support of its position, the Authority points out that a judgment n. o. v. constitutes the final disposition of a case, whereas the granting of a new trial does not dispose of the issues but leaves them for another jury to determine. The proper test to be applied to a motion for a new trial, the Authority contends, is that which we announced in Ahlstrom v. Cummings[8] at a date subsequent to the trial court's ruling upon the motion for a new trial in the instant case. We agree that there is a distinction to be observed by the trial courts in the handling of these two motions.

3. McLemore v. Harris, 374 P.2d 410, 412 (Alaska 1962); Parks v. Brown, 368 P. 2d 220, 221 (Alaska 1962).

4. The first and third errors specified read as follows:

"1. Failure of the trial court to grant Appellant's motion for new trial."

"3. That the principles announced in the Alaska Supreme Court opinion of Snipes v. March are applicable to this case."

5. State ex. rel. Rich v. McGill, 79 Idaho 467, 321 P.2d 595, 596, 73 A.L.R.2d 613

(1958); State acting by and through State Highway Commission v. Barovich, 142 Mont. 191, 382 P.2d 917, 918 (1963); State by and through State Highway Commission v. Nelson, 222 Or. 458, 353 P.2d 616 (1960), holding that the landowner has the burden of proof that just compensation requires a greater amount than the sum conceded by the government.

6. 378 P.2d 827 (Alaska 1963).

7. Id. at 828–829.

8. 388 P.2d 261 (Alaska 1964).

534

In the Ahlstrom case in affirming the trial court's denial of a motion for a new trial, we laid down a different test than that for ruling on a motion for judgment n. o. v., as follows:

"The matter of granting or refusing a new trial rests in the sound discretion of the trial judge. We shall not interfere with the exercise of his discretion except in the most exceptional circumstances and to prevent a miscarriage of justice. The circumstances which would require our intervention do not exist here. From a review of the record we cannot say that evidence to support the verdict was completely lacking or was so slight and unconvincing as to make the verdict plainly unreasonable and unjust. On the contrary, we find that the issues which the jury were called upon to decide turned upon facts which were in dispute, and that there was clearly an evidentiary basis for the jury's decision." [Footnotes omitted.] [9]

At the end of the opinion appears this bit of obiter dictum: "[T]here is nothing to indicate that the jury was ruled by passion or prejudice."[10]

Having in mind the test established in Ahlstrom v. Cummings for application by the trial court in ruling on a motion for a new trial, we proceed now to examine the evidence submitted to the jury on the issue of value in this case to determine whether it is sufficient to withstand the test.[11]

To prove the value of the land in question the Vincents produced two witnesses, one of whom was the co-owner and appellee, Charles Vincent, himself. He testified that the property was worth $45,000. The other witness, Ralph Hilleary, was a real estate broker and occasionally an appraiser, who estimated the property to be worth $20,500. The Authority likewise produced two witnesses, Simmons and Ballaine, both of whom qualified as expert real estate appraisers and both of whom were doing considerable real estate appraising for the Authority. Each gave it as his opinion that the property was worth $3,600.

■ The Authority devotes much space in its brief to attacking the admissibility of the evidence of Hilleary and Mr. Vincent on the ground that it was incompetent. We cannot find in the record that any objection or motion to strike on grounds of incompetency was ever made to the testimony of these two witnesses when they testified at the trial below. The objection cannot be raised for the first time on appeal and therefore we need not consider it.[12] That leaves only the question of what weight should be attached to the testimony of Hilleary and Vincent. The question was one for the jury to decide upon the evidence

9. Id. at 262.

10. Id. at 263.

11. It is of interest to note that our Civil Rule 59(a) relating to the granting of new trials states that "*A new trial may be granted* to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury or in an action tried without a jury, *if required in the interest of justice.*" [Emphasis supplied.] In contrast the comparable federal rule, Fed.R.Civ.P. 59 (a), says merely that a new trial may be granted "for any reasons for which new trials have heretofore been granted in actions at law." The federal courts hold that the trial court must exercise its discretion in deciding whether the jury's verdict should be set aside and a new trial granted, but they seem to have dif-

ficulty in deciding just when the trial court's discretion is reviewable in this area. We found an excellent discussion of the problem in 3 Barron & Holtzoff, Federal Practice and Procedure § 1302.1 (Rules ed. 1958). The conclusion reached by that authority is that when the motion for a new trial is made on the basis of the verdict being against the weight of the evidence, it is not subject to review on appeal. However, if the motion is made on the ground that the damages are excessive or inadequate, there is recent case authority which indicates that the discretion of the trial court will be subject to review. See also 6 Moore, Federal Practice paras. 59.08 [5] and 59.08 [6] (2d ed. 1953).

Cf. Parks v. Brown, 368 P.2d 220, 222 (Alaska 1962).

produced at the trial and under the court's instructions on the law. The Authority does not appear to have objected to any of the trial court's instructions and offered none of its own.

For the purposes of this case the evidence disclosed that the subject property was zoned R–2, in which the highest and best use permitted is for two-family dwellings. There was testimony that the improvements in the area of Vincents' property were generally substandard and that many of the buildings had no sewer connections or inside plumbing. The witness Hilleary admitted that there was blighted property within two block of the lots in question and that the lots bordered upon a highway which carried approximately 15,000 cars a day, these being factors which would tend to reduce the value of R–2 property. He seems to have been under the impression before the trial that the Vincent lots were in fact zoned R–3 and consequently prepared his "comparables" [13] on the basis of an R–3 zoning.[14] His testimony regarding the value of the properties he used as comparables was excluded; nevertheless he was able to give an opinion concerning the value of the lots in question as follows:

"Q Now based upon your investigation and knowledge in real estate in the Anchorage area, and your experience as broker and appraiser, are you able to give an independent evaluation, or estimate of the value of this property, independent of any—without using the comparable?

"A Yes, I think a very fair market value of the property is $20,500.00.

"Q And that would be the fair market value as of May 15, 1961?

"A Yes sir."

Mr. Vincent testified that he had been an owner of the property since November 1948—continuously for more than fourteen years, and had held it as a "nest egg"; that he had lived in Anchorage for seventeen years; and that he based his opinion of the value of his property on observation and "a good knowledge of Alaska." He admitted that he was thinking of commercial usage in making his evaluation. At the hearing before the court-appointed commissioners he had estimated the lots to be worth $56,000. He explained his lower estimate of $45,000 given at the trial by stating that he did not want to appear ridiculous and that he had recently discovered that he could duplicate the lots for the lower figure.

■■ We are of the same opinion now that we were at the time we rendered our decision in Ahlstrom v. Cummings, which is that only in the most exceptional circumstances to prevent a miscarriage of justice should this court interfere with the discretion of the trial court in the matter of granting or denying a motion for a new trial. No doubt cases will arise in which the evidence will be so "slight and unconvincing as to make the verdict plainly unreasonable and unjust" to use the language appearing in the Ahlstrom case.

In the memorandum decision accompanying his denial of the motion for a new trial in this case, the trial judge commented upon the varying evaluations placed upon Vincents' two lots by the four witnesses as follows:

"This is the testimony upon which the jury made an award of $17,000.00. I believe that the verdict is within the range of the testimony that was offered. The jury apparently believed that the opinion of the property owner, Vincent, was much too high. Of course, it must

13. "Comparables," as explained by Mr. Hilleary, are other properties sufficiently similar to the subject property in size, location, neighborhood characteristics, etc., so that the sale prices received for the comparables can be used as a basis for appraising the value of the subject property.

14. Property in an R–3 zone or district may be used for multiple-family dwellings, rooming houses, hotels, public or private nurseries, public libraries and museums and nonprofit art galleries, and also for private lodges and clubs and medical clinics and professional offices.

be recognized that he had an interest in the outcome of the case, which was obvious to the jury. The jury did not accept the appraisal of Hilliary, perhaps because of his error in classifying the property as commercial in character. Neither did the jury accept the opinion of the Authority's experts, for the ultimate award was almost five times higher than the opinions of Ballaine and Simmons. Possibly the jury reflected upon the improbability that each of these two appraisers could have independently of each other arrived at a value of $3600.00.

"It is well recognized that land appraisal is a relatively inexact science or art. I am reluctant to express any opinion of my own as to the value of the property. I cannot see that the verdict of the jury is so excessive that it ought to be set aside. Nor do I think it necessary for the jury to accept the valuation of any witness. Rather, I believe the jury was entitled to sort out the testimony and fix their own valuation on the property, making such allowances as might to them seem appropriate in the light of the testimony."

In view of the evidence in the record and the law applicable to this case, we cannot find any fault with the foregoing remarks of the trial judge and we cannot say that he abused his discretion in denying the motion for a new trial. The Authority does not claim that the jury was swayed by passion or prejudice in reaching its verdict and we are not aware that it was.[15]

Judgment affirmed.

15. In its brief the Authority states: "Considering all the testimony, it is patently obvious the jury was moved by considerations other than the evidence accepted by the Court." But the Authority lists neither passion nor prejudice as being among those "considerations."