IN THE MATTER OF THE PROCEEDINGS TO ACQUIRE RIGHTS IN LANDS OF THE MORRIS & CUMMINGS DREDGING COMPANY, IN THE CITY OF JERSEY CITY, HUDSON COUNTY, FOR PASSAIC VALLEY SEWERAGE COMMISSIONERS.

Submitted July 11, 1921—Decided November 14, 1921.

1. In condemnation proceedings testimony on behalf of a landowner to show possible uses for which the land in question may be made available, if extensive improvements involving necessarily large expenditure be made, is inadmissible.

2. In proceedings to condemn a right of way and easement for the construction of a sewer sixty-five feet beneath the surface of the land, a witness who had been associated with another engineer in acquiring and condemning land for a tunnel right from eight to twenty-five feet beneath the surface and under a railroad terminal four miles from the property under which the sewer is to be constructed, and also in acquiring a tunnel right from eight hundred to nine hundred feet under farmland and woodland for a pipe line twenty miles away is not an expert as to the amount which the land through which the sewer is proposed to be constructed will be depreciated by the construction of the sewer.

3. Whether similarity between properties in fact does or does not exist in order to permit a comparison of the values of rights of way and easements through said properties is a preliminary question to be decided by the court, and the decision of the court rejecting testimony as to values will not be disturbed on review if there be any evidence which justifies the court's ruling.

---

On appeal from the Supreme Court.

For the petitioner, *Riker & Riker*.

For the respondent, *McDermott & Enright*.

The opinion of the court was delivered by

KATZENBACH, J. The Passaic Valley Sewerage Commissioners instituted proceedings under the Condemnation act of 1900 to condemn a right of way and easement to construct a main trunk sewer (or outfall pressure tunnel) of an external horizontal diameter not exceeding eighteen feet at a depth of not less than sixty-five feet, measuring from the mean tide level in New York bay, by tunneling and without disturbing the surface of the ground and the right forever to operate and maintain said sewer and to repair and renew the same without disturbing the surface of the ground and any buildings thereon, through lands owned by the Morris & Cummings Dredging Company. The lands are located in the cities of Jersey City and Bayonne and constitute one tract fronting on New York bay, having an area of one hundred and fifty-six and seventeen one hundredths acres. There are forty acres of this tract between pierhead and bulkhead; about forty-five acres under water between the new and old bulkhead lines and about seventy-one acres behind the old bulkhead line, being the portion filled in. The length of the proposed sewer under the lands in question will be two thousand two hundred and ten and four one hundredths feet. In these condemnation proceedings commissioners were appointed. From the award of the commissioners the landowner appealed to the Hudson County Circuit Court. From the judgment of that court,

entered upon the verdict of a jury, the Passaic Valley Sewerage Commissioners have appealed to this court.

There are three grounds of appeal urged by the appellants— *first,* that the trial court erred in admitting testimony as to the possible use of the land for a port development scheme in connection with land of other owners, and improperly charged the jury that they might consider such evidence; *second,* that the trial court improperly admitted opinion evidence of an unqualified witness as to the value of the easement, and refused to charge the jury that they ought not to consider said evidence, and *third,* the trial court improperly refused to admit testimony of the price paid for a similar easement on similar property adjoining the dredging company's land on the north. These questions will be considered in their order.

Over objection, the trial court permitted the landowner to offer the testimony of an architect, to the effect that he had had, while a special assistant to the navy department, from April, 1918, to April, 1920, inquired into port and terminal conditions in the port of New York and had made a study of the available lands in the port of New York capable for development to meet port conditions; that additional port facilities were required because the handling of freight in the port of New York was the most expensive in the world, due to the main railroads being disconnected from the Island of Manhattan by having their terminals in New Jersey; that the navy department had as its objective the development of a large port or harbor with warehouse and storage facilities; that the most available land for such purpose was the land between the Pennsylvania-Greenville Terminal and Constable Hook; that this included the land of the dredging company; that this land was available because it was easily accessible by the railroads and within a thousand or twelve hundred feet of the main channel of the harbor. The witness was further permitted to testify that different government agencies had worked out detailed plans of a proposed auxiliary naval base and industrial terminal at this point. A photograph of a perspective drawing of this improvement was produced by the witness, showing piers, storage warehouses, nine stories in

height, dry docks, &c., and blue prints of plans for these improvements were produced and shown to the jury. The court also permitted the witness to testify that the piers, docks, warehouses shown on the plans was a reasonably probable development within the near future. Other witnesses were permitted to testify substantially along the same lines. The effect of such testimony before a jury would naturally be to enhance in the minds of the jurors the value of the land, and thereby increase the amount of the landowner's verdict for the right of way and easement being condemned. The appellant questions the propriety of the admission of this evidence.

In the case of *Currie v. Waverly, &c., Railroad Co.,* 52 *N. J. L.* 381, this court, speaking through Mr. Justice Garrison, held that the landowner should be permitted to produce evidence as to the situation and surroundings of his land for the purpose of demonstrating, if able, that there resulted to his land from these circumstances a special value growing naturally out of the best use to which, from its situation, it was presently adapted. The landowner in that case offered proof to show the situation and surroundings of the land in question with reference to its special availability as a railroad approach to an established centre of commerce, and this court held that it was error for the trial court to have refused to admit this testimony. In the present case the testimony admitted, however, went far beyond anything necessary to show to the jury the situation and surroundings of the land in question and the purpose for which it was available. To have admitted the testimony of the possible improvements such as piers, dry docks and storage warehouses which could be placed upon the property, and to show by drawings and plans the details thereof, was permitting the landowner to create in the minds of the jury a value for the property which was not a value in the immediate present or in reasonable anticipation in the near future, but a prospective value dependent upon many contingencies, such as the enactment of laws by the federal government necessary to commence and consummate the suggested plan of port development, the co-operation of the railroads without which the proposed piers and warehouses would

be valueless, the securing of the necessary funds by the government and railroads for so vast an undertaking. The failure of any one of the contingencies mentioned, or others not mentioned, would prevent the fruition of the project. The trial court also permitted the introduction of testimony which tended to exaggerate the damage done to the property by the acquisition of the proposed right of way and easement. One example of this will suffice. There was testimony admitted to the effect that the right of way which was to be sixty-five feet beneath the surface of the land might interfere with the installation of plunger elevators in the proposed warehouses, because plunger elevators require an excavation below the surface of the ground equal to the height of the building. It was error to have admitted these lines of testimony. It furnished the jury with testimony which may have led them to consider as actualities things which were mere contingencies and possibilities.

In *Manda* v. *Orange*, 82 *N. J. L.* 686, this court upheld the ruling of the trial court in excluding the offer of testimony to show what expense would be necessary to drain property in order to render it suitable for building purposes, and the cost of building streets through it, including grading, macadamizing, sewering, guttering and flagging. Mr. Justice Voorhees, in speaking for the court in this case, said:

"While the rule is that the landowner is entitled to receive the 'fair price for any use for which it has a commercial value of its own in the immediate present or in reasonable anticipation in the near future' (*Currie* v. *Waverly and N. Y., B. R. R. Co.*, 23 *Vroom* 381), yet that concerns the present market value, having the reasonably anticipated use in view, quite a different matter, however, from laying out the property in lots upon a map, estimating the cost of putting upon it the improvements of a city and calculating what the value would be if such improvements were actually made."

While in the present case the cost of the proposed port development was not given, the effect of the testimony which was given regarding the development and the drawings and plans offered and received in evidence would tend to lead the

jury to find the value of the property as if the improvements had been made. This would result in the jury finding for the landowner a larger verdict for the detriment to the property of the right of way and easement, because the higher the property would be valued by the jury the larger the sum awarded to the landowner for the right of way and easement would be. This result the appellants were entitled to be protected from by the exclusion of the testimony in question.

The second question presented by the appellant is the propriety of the trial court's ruling in admitting over objection the opinion of a Mr. D. as to the depreciation in value of the entire property as a result of the acquisition of the right of way and easement. Mr. D., who was a civil engineer by profession, testified that he was associated with another engineer at the time the Hudson and Manhattan Railroad Company were acquiring and condemning land under the railroad yards of the Lackawanna railroad in Jersey City and at the time a pipe line right of way was acquired for Jersey City which comprised in part tunnels under the Watchung mountains. The tunnel right acquired from the Lackawanna, it was shown, was from eight to twenty-five feet below the surface and the property was four miles away and was a railroad terminal with its tracks in use. The pipe line through the Watchung mountains was twenty miles away. The land through which it passed was farm and woodland and the tunnel was from eight hundred to nine hundred feet beneath the surface of the land. While the question of whether a witness called as an expert is qualified to give expert testimony is one to be primarily passed upon by the trial court, whose decision is not to be reversed, if there is any evidence to support it, yet, in the present case, we fail to find any evidence of Mr. D.'s qualifications to express an expert opinion upon the depreciation in value of the entire property by the taking of the right of way and easement. The two cases in which Mr. D. testified that he had had experience with tunnels were so dissimilar as to the character of the tunnel and the land through which they passed to the one in question that we are of the opinion that Mr. D. wholly failed to show that he had that

special knowledge of the effect upon the entire property of the right of way and easement sought to be condemned necessary to qualify him as an expert witness. The case of *Pennsylvania, New Jersey and New York Railroad* v. *Schwarz, 75 N. J. L.* 801, is similar to the present case. In that case a real estate agent familiar with prices of property in the locality of the land under which at a depth of two hundred feet below the surface of the ground a right of way for a railroad was to be condemned and acquainted with the effect of a railroad tunnel eighty or ninety feet below the surface with shafts through which the smoke and gas escaped, was held not to be an expert with respect to the value of the tract after the construction of the tunnel as compared with its present value. The testimony of Mr. D. as to the depreciation in value of the entire property as a result of the acquisition of the right of way and easement should have been excluded for lack of his qualifications to express an opinion upon the subject.

The third ground of appeal is the refusal of the trial court to allow testimony showing the price paid for an easement the appellant contends is similar to the one sought to be obtained in these proceedings and through a similar property. In order to permit a comparison of values the rule is that the properties or easements must be substantially similar in conditions. Whether similarity in fact exists, in order to make the comparison admissible, is a preliminary question to be decided by the court, and if there be any evidence to uphold the decision of the court, its ruling admitting such evidence in its discretion will not be disturbed by a court of review. *Manda* v. *Orange, supra.* If the trial court has found that sufficient similarity does not exist, its ruling rejecting testimony of values will not be disturbed, if there be evidence to uphold the decision. While the trial court, in the present case, bases its ruling refusing to admit the proffered testimony upon the fact that the agreement for the purchase of the right of way had been made after an award in condemnation proceedings, so that in the opinion of the trial court the sale of the right of way was compulsory and for that reason the amount agreed upon for its value was inadmissible, we

have failed to find in the record such full and convincing evidence of the similarity between the dredging company's property and the property known as the Currie property to justify our holding that the trial court erred in refusing to admit testimony of the price paid for the right of way and easement in the Currie property.

For the errors in the admission of the testimony at the trial to which we have called attention, the judgment will be reversed and a new trial ordered.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Swayze, Trenchard, Parker, Bergen, Minturn, Kalisch, Black, Katzenbach, Heppenheimer, Williams, Van Buskirk, JJ.  13.