541 P.2d 595

**A. I. D. INSURANCE SERVICES, a corporation, and Allied Mutual Insurance Company, a corporation, Appellants,**

**v.**

**David L. RILEY and Kathleen R. Riley, husband and wife, Insurance Companies Inspection Bureau, Inc., a Foreign Corporation, Appellees.**

**No. 2 CA–CIV 1858.**

Court of Appeals of Arizona, Division 2.

Oct. 28, 1975.

Rehearing Denied Dec. 5, 1975.

Review Denied Jan. 6, 1976.

2. If we were to follow the Alaska rule in this case, interest would only accrue on the sum of $5,763, the value of the part taken.

Lesher, Kimble, Rucker & Lindamood, P. C. by Monte C. Clausen, Tucson, for appellants.

Rabinovitz, Minker & Dix, P. C. by James S. Dix, Tucson, for appellees Riley.

Fish, Briney, Duffield & Miller, P. C. by Samuel D. Alfred, Tucson, for appellees Ins. Companies Inspection Bureau, Inc.

## OPINION

HOWARD, Chief Judge.

This is an appeal by A.I.D. Insurance Services and Allied Mutual Insurance Company (hereinafter referred to as A.I. D.) from a judgment awarding David and Kathleen Riley $10,000 for their losses resulting from fire damage to the rear rental unit on their property. The trial court, by minute order, initially awarded damages

against Brown and Saul Insurance Corporation only.

On May 20, 1974, the trial court granted a motion by the Rileys to amend the initial minute entry order to include A.I.D. as a party against whom judgment should be rendered. The written judgment, signed July 22, 1974, awarded the Rileys the sum of $10,000 in damages against A.I.D. plus costs. It further gave judgment in favor of A.I.D. against Brown and Saul Insurance Corporation for indemnification, plus their costs. Finally, it dismissed Brown and Saul Insurance Corporation's cross-claim against A.I.D. and A.I.D.'s third party complaint against Insurance Companies Inspection Bureau, Inc.

Appellants present the following questions for review:

"1. Was the trial Court correct in determining that A.I.D. was responsible for the acts of Brown?

2. Were the damages awarded by the trial Court justified under the law and evidence?

3. If the trial Court was correct in holding A.I.D. responsible for the acts of Brown, should A.I.D. have prevailed against inspection Bureau on its third-party complaint?"

## A.I.D.'s RESPONSIBILITY FOR ACTS OF BROWN

The Rileys' complaint was in three counts: declaratory relief, breach of contract and tort. In its minute entry decision, the court based the judgment on negligence. Although appellants concede that the evidence showed Mr. Saul, (an employee of Brown & Saul) to be negligent, they claim that the evidence does not support the type of relationship between appellants and Saul upon which one can impose liability for tort.

■ Appellants' liability for Saul's tortious conduct depends upon whether appellants had the right to direct Saul in the details of his conduct at the time of the tort and whether Saul was acting within the scope of his actual or apparent authority or employment. *American Savings Life Ins. Co. v. Riplinger,* 249 Ky. 8, 60 S.W.2d 115 (1933); *Bible v. First National Bank of Rawlins,* 21 Ariz.App. 54, 515 P.2d 351 (1973); Couch on Insurance 2d, Vol. 4, Sec. 26:434 p. 417; Appleman, Insurance Law and Practice, Vol. 16, Sec. 8863 p. 561.

The evidence in this case discloses that Saul was the part owner of Brown & Saul Insurance Corporation which had an agency agreement with appellant A.I.D. He was supplied with the policies by the company which he would issue upon an order from a customer. The policy would be rated and typed in his office and a copy mailed to the company for its records. There was no evidence that A.I.D. had any right to control the details of Saul's work and therefore no evidence upon which to find appellants liable for his torts.

■ However, where the trial court is correct in its final ruling, the reviewing court is bound to affirm, even though the trial court may have stated the wrong reason for its judgment. *Stewart v. Woodruff,* 19 Ariz.App. 190, 505 P.2d 1081 (1973).

■ The property in question was purchased by the Rileys through the A. P. Brown Real Estate Company. During the course of the transaction, Brown & Saul Insurance Corporation was recommended to handle the insurance. At that time A. P. Brown owned 50% of the stock in Brown & Saul Insurance Corporation and Mr. Saul owned the other 50%. Mr. Saul contacted the Rileys and took the information necessary to issue a homeowner's policy on the property. The Rileys testified that they explained to Saul that their property consisted of a duplex and a separate rental unit in the rear and that they informed him that they lived in one of the duplex units and rented the other two. The policy which was issued provided coverage of $15,000 for a three family dwelling and $1,500 for appurtenant structures. The

policy specifically excluded from coverage all appurtenant structures which were rented.

Saul denied that the Rileys ever told him about the separate rental unit. He was under the impression that the property consisted of a "three family dwelling". He did testify, however, that he intended to insure whatever property the Rileys owned, provided he got the correct information, i. e., had he known about the separate rental unit he could have secured insurance for the Rileys which would have covered it for fire loss or damage.[1]

On more than one occasion, the Rileys expressed their concern to Mr. Saul that their property be adequately insured. Each time, Saul responded that the coverage was proper. On one occasion Saul visited the property and again reassured the Rileys that the policy was properly written. On April 7, 1972, the rear rental unit was gutted by fire. A.I.D. refused payment on the ground that the exclusion for rented appurtenant structures barred recovery under the policy.

■ Where a policy of insurance, which has been drawn up by the agent of the insurer and merely accepted by the insured, does not represent the intention of both parties, because of the fault or neglect of the agent, it may be reformed so as to express the contract it was intended should be made, *Norem v. Iowa Implement Mutual Ins. Ass'n,* 196 Iowa 983, 195 N.W. 725 (1923). Where the party applying for insurance states the facts to the agent and relies on him to write the policy which will protect his interests, and the agent so understands, but fails by mistake to so write the contract, the mistake is considered mutual and the insured is entitled to reformation. *Artmar, Inc. v. United Fire & Casualty Co.,* 34 Wis.2d 181, 148 N.W.2d 641 (1967); *Trible v. Tower Insurance Co.,* 43 Wis.2d 172, 168 N.W.2d 148 (1969);

Appleman, Insurance Law and Practice, Vol. 13, Sec. 7609 p. 365.

■ Appellees Riley did not pray for reformation of the insurance contract. This is not, however, fatal to their recovery. Where the pleadings and evidence in an action upon an insurance policy are such as would warrant the court in reforming the policy, the court may give effect to the true contract and enforce the policy as if it were reformed, without making a formal decree of reformation. *Trible v. Tower, supra; Lumbermen's National Bank v. Corrigan,* 167 Wis. 82, 166 N. W. 650 (1918); 43 Am.Jur.2d, Insurance, Sec. 357 p. 407. We conclude that the trial court did not err in granting the judgment against A.I.D.

## DAMAGES

The testimony of appellees Riley showed the cost of replacing the burned dwelling to be $9,775. In addition, the loss in unscheduled personal property amounted to $425. Appellants contend that the most that could be recovered for the damaged building was the sum of $1,500, the amount of coverage under the policy for appurtenant buildings. We do not agree. If Saul had written the policy as he should have, it would have covered the Rileys' entire loss in this case.

Since appellants introduced evidence that the building was repairable and that the cost of restoration was less than the replacement cost, they argue that the court should not have awarded damages based upon replacement cost.

■ The measure of damages in cases such as this is set forth in *City of Globe v. Rabogliatti,* 24 Ariz. 392, 210 P. 685 (1922):

"The rule given in by far the greater number of cases is that the proper measure of damages for the destruction or injury of buildings, fences and the like

---

1. Saul testified that the premium difference between the policy in question and one cover-

ing the separate rental unit would be a matter of a "couple dollars".

improvements, which may at once be *replaced,* where the exact cost of restoring the property is capable of definite ascertainment, there being no damage to the realty itself, is the cost of restoring *or replacing* such property with compensation for the loss or impairment of its use during the reasonable time necessary to make such repairs *or to effect such restoration.*" (Emphasis added) 24 Ariz. at 398, 399, 210 P. at 687.

The foregoing rule is subject to a limitation. The cast of repair or replacement cannot exceed the difference between the fair market value of the structure before and after the injury. *City of Globe v. Rabogliatti, supra.* There was testimony and evidence from which the trial court could have concluded that a mere repairing of the building would not have placed it in its condition immediately prior to the fire. If appellants believed the cost of replacement exceeded the difference in market value before and after the fire, it should have made such a showing. Their failure to do so does not render the evidence of the cost of replacement insufficient to support the judgment. *Engel v. Dunn County,* 273 Wis. 218, 77 N.W.2d 408 (1956).

## THE THIRD PARTY COMPLAINT

The policy of insurance was issued on January 27, 1971. In early March of 1971, A.I.D. hired Insurance Companies Inspection Bureau, Inc. to inspect the premises. The inspection report forwarded to A.I.D. indicated that the property consisted of a single family residence rather than a three family dwelling. Because of this discrepancy, A.I.D. asked Brown & Saul to verify the type of dwelling on the property. Approximately two weeks later Saul sent A.I.D. a letter stating that the insured had been contacted and verified the dwelling to be a three family dwelling. Mr. Hill, the branch underwriting manager for A.I.D. testified that he relied on Mr. Saul's verification and did not rely on the report made by Insurance Companies Inspection

Bureau, Inc. Mr. Hill did not testify that A.I.D. would have cancelled the policy had it known that the separate rental unit was on the property but testified that he would instead have insured it by an endorsement to the policy and charged an extra premium.

A.I.D. filed a third party complaint against Insurance Companies Inspection Bureau, Inc. based upon indemnification. Appellants claim the trial court erred in not awarding them judgment against the third-party defendant for the amount of the judgment awarded to the Rileys. This contention is without merit. A right of indemnity exists whenever the relation between the parties is such that either in law or equity there is an obligation on one party to indemnify the other. *First National Bank of Arizona v. Otis Elevator Co.,* 2 Ariz.App. 596, 411 P.2d 34 (1966). The doctrine of indemnity rests upon the proposition that when one is compelled to pay money which in justice another ought to pay, the former may recover of the sums so paid, unless the one making the payment is barred by the wrongful nature of his conduct. *Lunderberg v. Bierman,* 241 Minn. 349, 63 N.W.2d 355 (1954). Restatement, Restitution Sec. 76. Appellants' obligation in this case rests upon the contractual relationship created by its agent, a relationship created long before the third party defendant inspected the property. If there were any negligence on the third-party defendant's part, it did not affect the already existing contract. The only loss that A.I.D. could have suffered was the extra premium it would have charged for the coverage, "a couple of dollars."

It would appear that the trial court took this amount into consideration in its judgment for the Rileys. A.I.D. suffered no loss from any conduct on the part of Insurance Companies Inspection Bureau, Inc.

Affirmed.

KRUCKER and HATHAWAY, JJ., concur.