821 P.2d 268

**SDR ASSOCIATES, Plaintiff/Appellee,**

v.

**ARG ENTERPRISES, INC.,
Defendant/Appellant.**

**No. 2 CA–CV 91–0085.**

Court of Appeals of Arizona,
Division 2, Department B.

Oct. 31, 1991.

Appeal Dismissed Nov. 26, 1991.

Miller, Pitt & McAnally, P.C. by Gerald Maltz and Eugene N. Goldsmith, Tucson, for plaintiff/appellee.

Lewis and Roca by Susan M. Freeman, John N. Iurino and Gary Dukarich, Tucson, for defendant/appellant.

OPINION

ROLL, Presiding Judge.

ARG Enterprises, Inc. (ARG) appeals from a judgment entered for SDR Associates (SDR) following a court trial. For the reasons set forth below, we affirm.

## FACTS

The facts, viewed in the light most favorable to upholding the verdict, *Imperial Litho/Graphics v. M.J. Enterprises*, 152 Ariz. 68, 72, 730 P.2d 245, 249 (App.1986), are as follows.

SDR owned a building on East Broadway in Tucson. ARG leased the premises from SDR and operated a Stuart Anderson's Black Angus Restaurant thereon. The ten-year lease term began on September 1, 1974, and was renewed in 1984 for an additional five years. The trial court found that the premises were delivered to ARG in good repair and condition. The lease included a provision requiring ARG to return the premises in like condition. During negotiations for the lease, SDR made rent concessions to ARG in consideration for this agreement to maintain the premises.

Approximately six months before the lease was due to expire, SDR notified ARG of the need to return the premises in good condition if the lease were not renewed. When the lease expired on August 31, 1989, however, the premises were in disrepair. ARG attempted to surrender the premises in this condition, but SDR declined to accept their return. Extensive repairs were required for the roof, including work involving the air conditioning unit and the exhaust fans, and the parking lot. These flaws prevented SDR from renting the premises. ARG maintained at least some control over the premises after expiration of the lease in order to repair the property. The repairs made were inadequate and described as "patch work" and "slap dash."

Before the lease expired, SDR was engaged in negotiations with Toys "R" Us, Inc., which included plans to possibly demolish the building. Despite these negotiations, SDR's preference was to relet the building as a restaurant. In fact, at the time of trial, the structure had not been destroyed.

## PROCEDURAL HISTORY

SDR filed a complaint seeking damages for breach of the lease arising from ARG's failure to return the premises to SDR in good condition and repair. SDR also sought damages for rent arising from ARG's holdover tenancy, allegedly occurring when ARG retained possession during September and October of 1989 so as to complete repairs.

The matter was tried to the court, which made findings of fact and conclusions of law. The trial court entered judgment in favor of SDR, awarding SDR $200,000 as the cost for restoring the premises to good condition, $38,287 for rent owed as a result of the holdover tenancy, $35,596 in attorney's fees, and $625.70 in costs.

## ISSUES ON APPEAL

On appeal, ARG argues (1) error occurred when the trial court computed damages as the cost of repair rather than diminution in market value; (2) the trial court erroneously refused to take into account the use of the premises following ARG's surrender of the premises; and (3) the trial court erred in finding a holdover tenancy.

## MEASURE OF DAMAGES

ARG argues that the trial court used an incorrect method of calculating damages arising from ARG's breach of the lease. Whether the trial court applied the correct measure of damages is a mixed question of fact and law reviewed *de novo*. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966). The correct measure, ARG maintains, is one based on diminution of market value, not cost of repair. Thus, because SDR ultimately elected to level the building following surrender of the premises, resulting in an increase in the value of the property, ARG caused no diminution in value.

ARG relies on *City of Globe v. Rabogliatti*, 24 Ariz. 392, 400, 210 P. 685, 688 (1922), *A.I.D. Insurance Services v. Riley*, 25 Ariz.App. 132, 136, 541 P.2d 595, 599 (1975), and *Jacob & Youngs, Inc. v. Kent*, 230 N.Y. 239, 129 N.E. 889 (1921). In *Rabogliatti*, plaintiffs' property was so damaged by flooding as to be beyond repair. The supreme court stated that when buildings can be repaired, the proper mea-

sure of damages is the cost of restoration. *Rabogliatti*, 24 Ariz. at 398, 210 P. at 687. If, however, the injury is "irremediable except at great cost, or where the property cannot be restored to its former condition," the measure of damages is the difference in value immediately before and immediately after sustaining the injury. *Id.* at 399, 210 P. at 687. *Rabogliatti* supports the trial court's resolution of this issue.

In *A.I.D. Insurance Services*, plaintiffs sustained fire damage to the rear rental unit of their property. Cost of replacement of the burned dwelling was $9,775. The court upheld this award of damages, stating that while cost of replacement cannot exceed the difference between fair market value before and after the injury, defendant failed to show that the cost of replacement exceeded the difference in before-and-after market values. *A.I.D. Insurance Services*, 25 Ariz.App. at 136, 541 P.2d at 599. However, as SDR points out, neither *Rabogliatti* or *A.I.D. Insurance Services* involves a lease agreement specifically requiring the lessee to return the property in good condition and repair.

■ Finally, ARG relies upon *Jacob & Youngs*, in which a plumber contracted to install pipes manufactured by the Reading Factory, but used pipes manufactured by the Cohoes Factory instead. The pipes were identical in every respect except for the name stamped thereon. The owner sought damages in the sum required in order to replace the plumbing with Reading Factory pipes. Judge Cardozo concluded that the owner was only entitled to the difference in market value between Cohoes Pipes and Reading Pipes. This case is inapplicable, however. *Jacob & Youngs* involves substantial performance of a construction contract. ARG does not claim to have substantially satisfied its obligation to repair the premises; rather, it asserts that it has been relieved of that obligation by the subsequent decision of SDR to demolish the building. We note that damages are measured as of the date of the breach.

*Lake Region Paradise Island, Inc. v. Graviss*, 335 So.2d 341, 342 (Fla.App.1976). The breach occurred here when the lease expired and ARG attempted to surrender the premises.

■ Despite ARG's reliance on *Rabogliatti*, *A.I.D. Insurance Services*, and *Jacob & Youngs*, these cases offer no support to ARG. Here, the damage was not irremediable. Even if it was, however, the test for diminution in value is the difference immediately before and after the lease was terminated, and subsequent events affecting value are irrelevant to that determination. The trial court applied the proper measure of damages in this case.[1]

*Farrell Lines, Inc. v. City of New York*, 30 N.Y.2d 76, 281 N.E.2d 162, 330 N.Y.S.2d 358 (1972) appears to be most closely on point. In *Farrell Lines*, a lessee contracted with a lessor for the lease of a pier. The lease agreement required the lessee to keep and maintain the property " 'in good and sufficient repair and condition.' " *Id.* at 84, 281 N.E.2d at 165, 330 N.Y.S.2d at 363. At the termination of the lease, the lessor calculated the cost of repair. The lessee insisted that it should not be required to pay to restore the premises to good condition, because after the lease was terminated, the lessor demolished the pier and constructed a shipping terminal. The New York Court of Appeals rejected this argument, stating:

> Similar contentions have been urged before other courts, and they have been uniformly rejected, the courts holding that the lessee's liability is unaffected by such circumstances. * * * In our opinion, this view is sound and should be adhered to. Not only does it give recognition to the fact that as a result of the lessee's failure to repair, the lessor may have had a narrower market for his property * * * but also to the fact that lessors generally will link the amount of rental charged with such covenants of repair.

1. In its findings of fact, the trial court stated that "[t]he diminution in value of the premises ... is greater than the cost of repair or restora-

tion." The trial court proceeded to award an amount less than that required for restoration.

**4**

*Id.* at 85, 281 N.E.2d at 166, 330 N.Y.S.2d at 364.

ARG failed to prove that the damages awarded SDR, arrived at immediately upon return of the property, were excessive. SDR gave ARG rent concessions. Furthermore, SDR presented sufficient evidence to sustain the trial court's determination that the cost of restoring the premises to good condition was $200,000. Therefore, the trial court did not err in calculating damages sustained by SDR.

### EXCLUSION OF EVIDENCE REGARDING DEMOLITION OF BUILDING

■ ARG next argues that the trial court erred in excluding evidence concerning the demolition of the building following expiration of the lease. We review the trial court's ruling on admission of evidence for abuse of discretion. *State v. Robinson*, 165 Ariz. 51, 56, 796 P.2d 853, 858 (1990), *cert. denied*, ── U.S. ──, 111 S.Ct. 1091, 112 L.Ed.2d 1195 (1991).

■ Initially, we note that the trial court did permit ARG to make an offer of proof and present evidence regarding subsequent demolition of the building. This offer insufficiently raised the issue of mitigation of damage. Even assuming that SDR's failure to mitigate damages was raised by ARG, this principle is inapplicable and this evidence irrelevant because when the lease expired the breach arising from deterioration of the premises occurred and the damages were not subject to mitigation.[2] *Cf. Brown v. Valley National Bank of Arizona*, 26 Ariz.App. 538, 549 P.2d 1056 (1976) (landlord had duty to mitigate when tenants vacated prior to the end of the lease term). SDR was entitled to be made whole after ARG's breach. Accordingly, we find no error on this ground.

### LOST RENTAL INCOME

■ Finally, ARG argues that the trial court had insufficient evidence from which to conclude that ARG was a holdover tenant. In reviewing sufficiency of the evidence, the trial court's findings of fact are binding on an appellate court unless they are clearly erroneous or unsupported by any credible evidence. *Imperial Litho/Graphics*, 152 Ariz. at 72, 730 P.2d at 249.

■ The evidence presented to the trial court indicated that after the lease expired, SDR was unable to rent the premises as a restaurant because it was left in disrepair by ARG. ARG, reluctantly, retained sufficient control over the premises following termination of the lease to restore the premises to their former condition. These repairs occurred during the months of September and October 1989. While these repairs were taking place, SDR was unable to lease the premises. SDR points to the fact that the absence of adequate air conditioning and fan units prevented reletting of the premises to a restaurant concern, and repair of the parking lot prevented full use of the premises by any customers of potential lessees. A tenant's failure to return the property to its original condition as required by the lease entitles the landlord to loss of rent during the time necessary to restore the premises. *Fisher Properties v. Arden–Mayfair, Inc.*, 106 Wash.2d 826, 838, 726 P.2d 8, 20 (1986). Sufficient evidence exists to support the trial court's conclusion that ARG was liable for rent during this period.[3]

### CONCLUSION

For the reasons set forth above, we affirm. Appellee will be awarded attorney's

---

**2.** A plaintiff's failure to mitigate damages may be invoked to negate or reduce damages "where the plaintiff by his own voluntary activity has unreasonably exposed himself to damage or increased his injury." *McCormick on Damages*, § 34 at 131 (1934). SDR did neither.

**3.** ARG does not argue and presented no evidence that fair rental value of the premises was less than the rent required by the lease. Accordingly, whether the damages are characterized as lost rent or rent under a holdover tenancy, the trial court did not err in the amount awarded.

fees on appeal upon compliance with Rule 21(c), Ariz.R.Civ.App.P., 17B A.R.S.

FERNANDEZ and HOWARD, JJ., concur.